UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REX HOPPER, No. 13709-025<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Civil Case 3:22-cv-01959-JPG<br><br>Criminal Case 4:17-cr-40034-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (Doc. 1). Hopper timely filed his petition on August 23, 2022. The Petitioner has also filed a motion to supplement his pending arguments (Doc. 17). Having considered the additional arguments the Petitioner raises, but finding them unpersuasive, the Court **GRANTS** the motion to supplement. Finding that Petitioner's counsel was not ineffective, the Court **DENIES** Hopper's petition, **DECLINES** to issue a certificate of appealability, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

I.   **Background**

**Trial and Sentencing**

In 2017, Rex Hopper was indicted for conspiracy to distribute more than fifty grams of a mixture or substance containing methamphetamine in violation of 18 U.S.C. 841(b)(1)(B)(viii). This placed him in the statutory range of five to forty years. Hopper was represented by Justin Kuehn, a Criminal Justice Act (CJA) panel attorney.

Hopper had a reputation as an "ice" dealer and at trial multiple witnesses testified as to their "ice" transactions with Hopper. All evidence and witness testimony concerning

methamphetamine involved "ice" i.e. "crystal meth" or methamphetamine of a high purity level.

Ultimately the jury found Hopper guilty and on his special verdict form specifically found him guilty of distributing more than fifty grams of a mixture or substance containing methamphetamine.

On July 17, 2018, Hopper was sentenced to 235 months in prison. At his sentencing Kuehn raised an objection to the drug house enhancement and made several arguments in favor of mitigation. Whether Hopper should be sentenced according to guidelines related to "ice" was neither raised nor disputed by any party. When Hopper was asked whether he had any objections, he said he did not.

**Appeals and Resentencing**

On July 18, 2018, Hopper appealed his sentence on a variety of grounds, including the weight and purity of the methamphetamine. Two witnesses testified to the same transaction with Hopper. Initially, probation believed the witnesses were testifying as to two separate transactions when, in fact, they were testifying to the same transaction. As a result, the Court of Appeals for the Seventh Circuit found that some of the methamphetamine had been double-counted by Probation. The Appellate Court remanded the case for resentencing on the issue of drug weight. As to Hopper's claims that the purity of the drugs, the Court of Appeals rejected this claim because he had not raised it at sentencing.

At his resentencing, the Government believed the 3553(a) factors warranted resentencing him for the same time in prison as he was sentenced before, despite the lower guideline range. The Government noted that he had received another criminal history point since his original sentencing. Hopper tried to raise the issue of drug purity at resentencing, but Kuehn refused to object, believing the objection would be frivolous. Hopper objected *pro se* and asked for leave of

court to submit a written objection explaining his position. The Court granted leave to file his objection and rescheduled the resentencing.

In his *pro se* objection, Hopper raised several claims; of relevance here, he objected to the drug purity—arguing that the indictment and jury verdict were both based on a methamphetamine mixture, not "ice," and therefore, he should not have been sentenced according at a higher guideline range for "ice."

On January 28, 2020, at Hopper's rescheduled sentencing hearing, the Court overruled his objections, finding that any argument as to drug purity was beyond the scope of the Appellate Court's remand, and gave him the same sentence as before: 235 months.

On March 5, 2020, Hopper appealed again, arguing, among other things, that the Court committed plain error by not considering his drug purity objection on remand. The Appellate Court rejected his arguments and found that the Court did not commit plain error because the scope of the remand was solely as to drug amount, not purity. The Appellate Court issued its decision on August 25, 2021.

**§ 2255 Petition**

On August 23, 2022, Hopper filed a petition pursuant to 28 U.S.C. § 2255. In his petition, Hopper argues that his counsel was ineffective for failing to object to drug purity at sentencing.

Hopper argues, because neither the indictment nor jury verdict mention purity, that any finding related to the purity of the methamphetamine is an essential element of the crime that must be decided by a jury. Because the jury only found Hopper guilty of fifty grams or more of a methamphetamine *mixture* not *pure* methamphetamine, and because the full quantity of meth at controversy was not available to test, Hopper believes that he was improperly sentenced at a higher guideline range and that Kuehn should have objected.

After filing his § 2255, Hopper also filed a motion to supplement (Doc. 17). This supplement expands on Hopper's argument for ineffective assistance of counsel, but do not add any additional claims or additional material facts.

I.      **Legal Standard**

When a defendant is charged with a crime, the government bears the burden of proving every element of that crime beyond a reasonable doubt. Once convicted, a defendant's sentence is fixed by the crime of conviction.

A defendant that conspires with intent to distribute more than 50 grams of a mixture of methamphetamine, or more than 5 grams of pure methamphetamine, may be sentenced no less than 5 years and up to 40 years. 18 U.S.C. § 841(b)(1)(B)(viii). A defendant that conspires with intent to distribute more than 500 grams of a mixture of methamphetamine, or more than 50 grams of pure methamphetamine, may be sentenced for no less than 10 years and up to life. 18 U.S.C. § 841(b)(1)(A)(viii). These ranges of imprisonment are referred to as *statutory* ranges. A court cannot sentence a defendant outside the *statutory* range.

In the past, courts had wide discretion to sentence defendants as they saw fit within the *statutory* range. However, the wide sentencing discretion led to sentencing disparities. In response to these challenges, Congress created the United States Sentencing Commission. The Sentencing Commission promulgated the United States Sentencing Guidelines. These guidelines provided a much narrower range of punishment, more tailored to the specific defendant's offense, the circumstances surrounding their offense, and their criminal history.

Currently, after conviction but before sentencing, the United States Probation Office prepares a presentence report that recommends a sentencing range based on the defendant's relevant conduct and criminal history. This is referred to as a *guideline* range. A defendant's

specific conduct, enhancements, and criminal history are facts that the court determines at sentencing, by a preponderance of the evidence, that determine a defendant's *guideline* range. However, any fact that increases the *maximum statutory* range is considered an element of the offense and must be submitted to a jury. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). "In federal prosecutions, such facts must also be charged in the indictment." *United States v. Cotton*, 122 S. Ct. 1781, 1783 (2002) (citing *Apprendi*, 530 U.S. at 476).

> In drug cases:
>
> [D]istrict courts may still determine a drug offender's base level offense by calculating quantities of drugs that were not specified in the count of conviction but that the court concludes, by a preponderance of the evidence, were a part of the defendant's relevant conduct, as long as that determination does *not* result in the imposition of a sentence that *exceeds* the *statutory maximum* penalty for that crime. Relevant conduct includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.
>
> *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) (citing *United States v. Jones*, 245 F.3d 645, 651 (7th Cir. 2001)) (emphasis added).

This principle also applies to the purity of drugs. Put simply, "[a] sentencing court can find a defendant responsible for a greater amount of drugs than reflected in a jury's verdict — as long as the sentence does not exceed the *statutory maximum*." *Nunez v. United States*, 2013 U.S. Dist. LEXIS 66645 *10 (N.D. Ill. 2013) (internal citations and quotations omitted) (emphasis added). "When a drug dealer is sentenced to *less* than [the *statutory maximum*] *Apprendi* is irrelevant." *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000) (emphasis added).

Therefore, while a sentencing court has discretion to sentence a defendant within or outside the *guideline* range, a sentencing court cannot sentence a defendant outside the *statutory* range. So long as a judge renders a sentence within the statutory range, the issue does not need to go before a trier of fact again.

**§ 2255 and Ineffective Assistance of Counsel**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id*. To satisfy the second prong of the Strickland test, the

plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591; *Jones*, 635 F.3d at 915.

In the sentencing context, the court asks whether counsel's failure fell below an objective standard of reasonableness and, but for counsel's failure to object, it was reasonably probable that defendant would have received a different sentence. If counsel's performance did not fall below an objective standard of reasonableness *or* it is not reasonably probable that the defendant's sentence would have been different but for counsel's performance, then a defendant's counsel was not ineffective and any § 2255 petition on that basis must be denied.

II.     Analysis

Hopper's second appeal was denied and final judgment was issued on August 25, 2021. Hopper filed his § 2255 on August 23, 2022. As less than one-year passed between the final judgment in his case and the filing of his § 2255, the Court finds his petition timely and shall proceed with an evaluation of the merits.

Hopper was convicted of conspiracy with intent to distribute more than 50 grams of methamphetamine mixture or more than 5 grams of pure methamphetamine (or alternatively "ice"). This placed his *statutory* range of 60 to 480 months in prison. 18 U.S.C. § 841(b)(1)(B)(viii). The Court adopted the findings of the presentence report, which found that he was culpable for "ice." Hopper argues, because the jury did not decide the issue of purity, there were no lab tests performed on the drugs he conspired to distribute, and finding that this methamphetamine was "ice" raised his guideline range significantly; that the question of purity

should have been put to the jury. As Hopper did not raise this objection at sentencing, it was rejected by the Appellate Court. However, Hopper believes that Kuehn was ineffective for not raising an objection to the Court's factual finding on the purity of the methamphetamine.

Hopper is incorrect.

The issue of purity does not need to go to a jury unless it "*results* in the *imposition* of a sentence that *exceeds* the *statutory maximum*." *United States v. Martinez*, 301 F.3d at 865 (emphasis added). The statutory maximum under 18 U.S.C. § 841(b)(1)(B)(viii) is 480 months. While the Court found Hopper culpable for a large amount of "ice," the Court imposed a sentence of only 235 months. Because Hopper's sentence of 235 months did not exceed the statutory maximum of 480 months, Hopper's sentence was constitutional.

The question is whether Keuhn was ineffective for not objecting at sentencing. Given the plethora of evidence at sentencing related to Hopper's "ice" dealing, while Keuhn could have objected, Keuhn instead chose to focus on more plausible alternatives for arguing for a lower sentence—such as arguing against the drug house enhancement or attempting to persuade the Court to not place emphasis on Hopper's criminal history given the time that had passed between his different criminal offenses. For all these reasons, the Court finds that Keuhn's performance did not fall below an objective standard of reasonableness. However, even if Keuhn's performance was deficient, due to the plethora of evidence related to Hopper's "ice" dealing, the Court would most probably have overruled his objection and sentenced Hopper as it initially did.

### III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner. A certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).

The Court finds that Hopper has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## CONCLUSION

Because Hopper's sentence did not exceed the statutory maximum, Hopper's sentence was not illegally imposed. Additionally, because Keuhn's refusal to object to the drug purity did not fall below an objective standard of reasonableness. Moreover, even if Keuhn had objected, the Court would have most probably overruled his objection given the evidence. Therefore, Keuhn was not ineffective. The Court has considered the additional arguments raised in his motion to supplement (Doc. 17), accordingly, his motion to supplement is **GRANTED**, however, the Court finds the supplement unpersuasive. Therefore, Hopper's § 2255 (Doc. 1) is hereby **DENIED**. Furthermore, the Court **DECLINES** to issue a certificate of appealability, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  February 21, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**